RIVERA v. ATCHISON, T. & S. F. RY. CO.†

(Court of Civil Appeals of Texas. El Paso. June 6, 1912. Rehearing Denied June 26, 1912.)

1. EXECUTORS AND ADMINISTRATORS (§ 3*)—NECESSITY FOR ADMINISTRATION — EXEMPT PROPERTY.

Where the only property of an intestate is exempt, no necessity for administration exists.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 3–14½; Dec. Dig. § 3.*]

2. DEATH (§ 8*)—WHAT LAW GOVERNS.

Where a cause of action for the death of a servant of a railway company arose in the territory of New Mexico, the Federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. Supp. 1911, p. 1322]) governs wherever it is in conflict with the territorial laws.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 12, 36, 52, 121, 133; Dec. Dig. § 8.*]

3. DEATH (§ 8*)—WHAT LAW GOVERNS.

Where a servant of a railway company was killed while engaged in interstate commerce, the Federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. Supp. 1911, p. 1322]) governs the cause of action for his injuries.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 12, 36, 52, 121, 133; Dec. Dig. § 8.*]

4. DEATH (§ 35*)—WRONGFUL DEATH—JURISDICTION.

The right of action for the wrongful death of an employé, though given under the statute of a foreign state, is transitory and goes with

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

† Writ of error denied by Supreme Court.

the person having the right of action, and it may be enforced in the courts of the local forum unless contrary to their public policy.

[Ed. Note.—For other cases, see Death, Cent. Dig. § 50; Dec. Dig. § 35.*]

5. DEATH (§ 31*) — WRONGFUL DEATH—PERSONAL REPRESENTATIVES—WHO ARE.

Under the Federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. Supp. 1911, p. 1322]), and Acts 31st Leg. (1st Ex. Sess.) c. 10, both of which give a cause of action to the personal representative of an employé who is killed through the negligence of the master, the term "personal representative" means executor or administrator.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 35, 37–46, 48; Dec. Dig. § 31.*]

6. EXECUTORS AND ADMINISTRATORS (§ 20*)—APPOINTMENT—NECESSITY OF PROCEEDINGS.

No administrator of an intestate can be appointed in the absence of administration proceedings.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 83–105; Dec. Dig. § 20.*]

7. EXECUTORS AND ADMINISTRATORS (§ 13*)—APPOINTMENT — POWER OF PROBATE COURT.

Under Const. art. 5, § 16, providing that the county court shall have general jurisdiction of the probate court to grant letters testamentary and of administration, and to transact all business appertaining to the deceased person, and Rev. St. 1895, art. 1840, conferring the same powers on that court, the county court, in the exercise of its probate jurisdiction, is a court of general jurisdiction and has power to grant letters of administration in all cases where the general object of the state's system of probate law may require it.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 26; Dec. Dig. § 13.*]

8. EXECUTORS AND ADMINISTRATORS (§ 12*)—APPOINTMENT—POWER OF PROBATE COURT.

Where, through negligence of his employer, a railroad employé was killed in New Mexico leaving a wife and children resident in Texas, and the Federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. Supp. 1911, p. 1322]), as well as Comp. Laws N. M. 1897, § 3214, and Acts 31st Leg. (1st Ex. Sess.) c. 10, give a right of action for wrongful death to the personal representative of such deceased person for the benefit of the surviving widow or husband and children of such employé, *held*, that a right of action which was controlled by the federal statute was transitory, and administration might be had in Texas, although the deceased left no property subject to administration save the cause of action.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 24; Dec. Dig. § 12.*]

Appeal from District Court, El Paso County; A. M. Walthall, Judge.

Teofila R. de Rivera was appointed administratrix of Santiago Rivera, deceased, and the Atchison, Topeka & Santa Fé Railway Company filed its petition of contest. From a judgment of the probate court denying the petition, the railroad company appealed to the district court, and from a judgment annulling the administration proceedings, the administratrix appeals. Reversed and remanded, with directions.

Patterson & Wallace and P. E. Gardner, all of El Paso, for appellant. Turney & Burges, of El Paso, and Terry, Cavin & Mills, and A. H. Culwell, all of Galveston, for appellee.

McKENZIE, J. This is an appeal taken from the judgment of the district court declaring void the probate proceedings of the county court of El Paso county appointing appellant administratrix and personal representative of the estate of Santiago Rivera, deceased. The administratrix was appointed to prosecute to final judgment a suit against appellee for damages growing out of the negligent killing of deceased. On August 14, 1911, and for a time prior thereto, deceased was an employé of appellee, and while so employed and in the active performance of the duties of his employment in the county of Valencia, territory of New Mexico, through the negligence of appellee and its employés in operating appellee's train, he was instantly killed. Rivera died intestate and left surviving him his wife, Teofila R. de Rivera, and five minor children. At time of death and prior thereto, the deceased and his wife and minor children resided in El Paso county, Tex., and since death his wife and minor children have continued to reside in El Paso county, Tex. At the time of his death, deceased owned household and kitchen furniture of the value of $20, and owed a grocery account of $19.25. On October 12, 1911, on application, the county court appointed appellant administratrix and personal representative. The order of appointment required the prosecution of the said cause of action to final judgment, and that written report be thereafter made to the court, showing the result of the prosecution. Appellant duly qualified as administratrix and personal representative and entered suit to collect the damages upon said cause of action in the United States Circuit Court for the Western District of Texas. The appellee was shown to be a railroad corporation, and, at time of the accident and since, was operating a line of railroad in the territory of New Mexico; said line extending into El Paso county, Tex., where it maintains an office and local agent. On November 10, 1911, appellee filed in the county court, where the probate proceedings were pending, its petition of contest, seeking to have the administration proceedings and all acts done thereunder vacated, and to have the administratrix and personal representative so appointed discharged, alleging as grounds therefor that no necessity existed for the administration, and that the county court was without jurisdiction to make the appointment. Upon hearing, the court denied the petition, and appellee appealed to the district court. On December 13, 1911, the cause coming on for trial in the district court,

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

judgment was there entered for the appellee, annulling the administration proceedings had in the county court, and ordered that the administratrix and personal representative so appointed be discharged, and further ordered that the suit commenced in the United States Circuit Court for the Western District of Texas be dismissed. It is from this judgment that appeal is taken to this court.

[1] The household and kitchen furniture being exempt property, it cannot be said that it alone created a necessity for an administration of the estate. The sole question then to be decided by this court is, Did the county court have jurisdiction to appoint appellant administratrix and personal representative for the sole purpose of prosecuting to final judgment said cause of action?

The Compiled Laws of the territory of New Mexico, § 3214, authorize a recovery where death is caused by the wrongful act, negligence, or default of another, and section 3215 provides that suit shall be brought by and in the name of the personal representative of such deceased person, and the amount so recovered to be distributed to the wife and minor children, equally to each, which said amount shall not be liable for any of the debts of the deceased.

Section 1, General Laws 1909, p. 279, of this state, is as follows: "That every corporation, receiver, or other person operating any railroad in this state, shall be liable in damages to any person suffering injury while he is employed by such carrier operating such railroad; or in case of the death of such employé, to his or her personal representative for the benefit of the surviving widow and children, or husband and children, and mother and father of the deceased, and if none, then of the next kin dependent upon such employé for such injury or death resulting in whole or in part from the negligence of any of the officers, agents or employés of such carrier; or by reason of any defect or insufficiency due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment; provided the amount recovered shall not be liable for the debts of deceased and shall be divided among the persons entitled to the benefit of the action, or such of them as shall be alive, in such shares as the jury, or court trying the case without a jury, shall deem proper; and provided in case of the death of such employé the action may be brought without administration by all the parties entitled thereto, or by any one or more of them for the benefit of all, and if all parties be not before the court the action may proceed for the benefit of such of said parties as are before the court."

The Federal Employers' Liability Act, passed April 22, 1908, c. 149, 35 U. S. Stat. at Large, pt. 1, pp. 65-66, sections 1 and 2 of the act are as follows:

"Section 1. Be it enacted by the Senate and House of Representatives of the United States of America, in Congress assembled, that every common carrier by railroad, while engaging in commerce between any of the several states or territories, or between any of the states and territories, or between the District of Columbia and any of the states or territories, or between the District of Columbia or any of the states or territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employé, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employé; and, if none, then of such employé's parents; and, if none, then of the next of kin dependent upon such employé, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employés of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

"Sec. 2. That every common carrier by railroad in the territories, the District of Columbia, the Panama Canal zone, or other possessions of the United States, shall be liable in damages to any person suffering injury while he is employed by such carrier in case of the death of such employé, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employé; and, if none, then of such employé's parents; and, if none, then of the next of kin dependent upon such employé, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employés of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment."

By amendment of April 5, 1910 (Act April 5, 1910, c. 143, § 1, 36 Stat. 291 [U. S. Comp. St. Supp. 1911, p. 1324]), section 6 of the last-named act was amended to read as follows: "Sec. 6. That no action shall be maintained under this act unless commenced within two years from the day the cause of action accrued. Under this act an action may be brought in a Circuit Court of the United States, in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of commencing such action. The jurisdiction of the courts of the United States under this act shall be concurrent with that of the courts of the several states, and no case arising

under this act and brought in any state court of competent jurisdiction shall be removed to any court of the United States."

[2] From examination it is seen that the Texas act and the federal act are substantially to the same effect. The Texas act, as stated in the emergency clause, was to prevent conflict between the federal and state courts in construing the federal and the state statutes in suits against common carriers by employés for damages on account of personal injuries. In so far as there is conflict between the federal act and the Compiled Laws of the territory of New Mexico, the federal act controls, and, the cause of action having arisen in the territory of New Mexico and subsequent to the passage of the federal act, it follows that the right of action is controlled by the federal act. Mondou v. N. Y., N. H. & H. R. Co., 223 U. S. 1, 32 Sup. Ct. 169, 56 L. Ed. 327; Cound v. A., T. & S. F. Ry. Co. (C. C.) 173 Fed. 527; Clark v. So. Pac. Co. (C. C.) 175 Fed. 122.

[3] In like manner the cause of action would be controlled by the federal act if the injuries were received while the common carrier was, at the time of such injuries, engaged in interstate commerce, and by the amendment ingrafted upon the original act to the effect that "the jurisdiction of the courts of the United States under this act shall be concurrent with that of the courts of the several states," makes the act as to such jurisdiction the law of the state for collection of damages in causes of action arising thereunder.

In Mondou v. N. Y., N. H. & H. R. Co., supra, it is said that: "The suggestion that the act of Congress is not in harmony with the policy of the state, and therefore that the courts of the state are free to decline jurisdiction, is quite inadmissible, because it presupposes what in legal contemplation does not exist. When Congress, in the exertion of the power confided to it by the Constitution, adopted that act, it spoke for all the people and all the states, and thereby established a policy for all. That policy is as much the policy of Connecticut as if the act had emanated from its own Legislature, and should be respected accordingly in the courts of the state. As was said by this court in Claflin v. Houseman, 93 U. S. 130, 136, 137, 23 L. Ed. 833, 838, 839: 'The laws of the United States are laws in the several states, and just as much binding on the citizens and courts thereof as the state laws are. The United States is not a foreign sovereignty as regards the several states, but is a concurrent and, within its jurisdiction, paramount, sovereignty. * * * If an act of Congress gives a penalty (meaning civil and remedial) to a party aggrieved, without specifying a remedy for its enforcement, there is no reason why it should not be enforced, if not provided otherwise by some act of Congress by a proper action in a state court. The fact that a state court derives its existence and functions from the state laws is no reason why it should not afford relief, because it is subject also to the laws of the United States, and is just as much bound to recognize these as operative within the state as it is to recognize state laws. The two together form one system of jurisprudence which constitutes the law of the land for the state, and the courts of the two jurisdictions are not foreign to each other, nor to be treated by each other as such, but as courts of the same country, having jurisdiction partly different and partly concurrent. * * * It is true the sovereignties are distinct, and neither can interfere with the proper jurisdiction of the other, as was so clearly shown by Chief Justice Taney in the case of Ableman v. Booth, 21 How. 506, 16 L. Ed. 169, and hence the state courts have no power to revise the action of the federal courts, nor the federal the state, except where the federal Constitution or laws are involved. But this is no reason why the state courts should not be open for the prosecution of rights growing out of the laws of the United States, to which their jurisdiction is competent and not denied.' "

[4] Independent of the fact that the federal act confers jurisdiction upon the state courts concurrent with the jurisdiction of the federal courts, it is the settled law that the cause of action is transitory; that is, it goes with the person who has the right of action, and can be enforced through the courts of this state unless contrary to our public policy. It is seen that the New Mexico act and the federal act each provides that the suit shall be brought by the personal representative. The Texas act provides that the action may be brought by the personal representative, or by all the parties entitled thereto, or by any one or more of them for the benefit of all. Under the federal act it is held that the personal representative and no one else is authorized to maintain the cause of action. Fithian v. Railway Co. (C. C.) 188 Fed. 845; Thompson v. Railway Co. (C. C.) 184 Fed. 554.

[5, 6] The term "personal representative," as used in both the state and federal act, means an executor or administrator. Under the law of this state, in order to appoint such personal representative, an administration proceeding is of necessity required. Green v. Rugely, 23 Tex. 539.

[7] The question then recurs, Did the county court have jurisdiction to appoint appellant administratrix and personal representative to prosecute said cause of action to final judgment?

Article 5, § 16, of the state Constitution, provides: "The county court shall have the general jurisdiction of a probate court, * * * grant letters testamentary and of administration, * * * transact all business appertaining to deceased persons, * * * including the settlement, partition and distribution of estate of deceased persons." To

the same effect is article 1840 of the Revised Statutes of 1895, which provides: "The county court shall have the general jurisdiction of a probate court. It shall probate wills, grant letters testamentary or of administration, settle the accounts of executors and administrators, and transact all business appertaining to the estates of deceased persons, including the settlement, partition and distribution of such estates."

It is seen, then, that the county court, when in the exercise of its probate jurisdiction, is a court of general jurisdiction and is not confined to any express statutory enactment, but, as said in Green v. Rugely, supra, "the power to grant letters of administration is sufficiently broad to admit an administration in all cases where the general objects of our system of probate law may require it." Green v. Rugely, supra; Moore v. Mertz, 38 Tex. Civ. App. 283, 85 S. W. 312; Dodson v. Wortham, 18 Tex. Civ. App. 666, 45 S. W. 858.

[8] Under the laws of this state, a cause of action is property and an asset of the estate, and, being property and an asset of the estate, the right to administration would of necessity follow. In this connection we quote with approval, as decisive of the case at bar, the learned opinion in So. Pac. Co. v. De Valle Da Costa, 190 Fed. 689, 111 C. C. A. 417: "The enactment of a statute giving an action for death, and requiring that it shall be brought by a personal representative, we think should be regarded as a conclusive recognition of the right of administration to enforce such a claim. If a statute designates the personal representative of the deceased as the proper plaintiff, to limit the right to cases in which the deceased left assets other than the right of action would introduce an unreasonable and arbitrary distinction. To hold that suit might be brought in the state of Massachusetts for causing death if the deceased left property in the state, but that it could not be brought if he had no property, would be to make a distinction in favor of persons who have estates against persons who have no estates—to deny the remedy to those most in need of it."

Again quoting from the same opinion: "While under certain statutes it may be said that there are no assets of the estate of the decedent subject to the claims of the general creditors of a decedent's estate, yet it should be recognized that the defendant's liability arises out of its wrong to the deceased, and that the right of the beneficiaries is derivative from the right of the deceased. The provision which makes a legal representative the proper plaintiff to enforce the liability is a recognition that the statute is based upon the rights of the deceased, and that, the rule of the common law, which forbade an action if death ensued, being annulled, the right of the deceased remains to be enforced by his personal representative, even though the statute provides a particular mode of distribution different from that of ordinary administration. To say that a reasonable compensation for his wrongful death is not to be regarded as assets for the purpose of obtaining administration is to afford a basis for technical objections which ignore the nature of the decedent's right and the principle of justice upon which such a statute is founded. In order that property be assets of an estate, it is not necessary that it follow the ordinary rules of distribution. In Blagge v. Balch, 162 U. S. 439-463, 16 Sup. Ct. 853, 858, 40 L. Ed. 1032, Chief Justice Fuller observed: 'It often happens that administrators receive money which is not to be administered as part of the general assets, but is to be distributed in a particular way.' The reasoning of the opinions in Sargent v. Sargent, 168 Mass. 420, 47 N. E. 121, and Walsh v. Boston & Maine R. R. Co., 201 Mass. 527, 533, 88 N. E. 12, supports the view that the value of a man's life to his wife or next of kin constitutes, with a certain limitation as to the amount, a part of his estate which he leaves behind him to be administered by his personal representative. When the statutes of a state provide that an action for causing death may be brought by a personal representative for the benefit of the next of kin, we think it follows that there arises a right to the appointment of a personal representative on this ground alone (see Sargent v. Sargent, 168 Mass. 420, 47 N. E. 121); otherwise, as we have said, an unjust discrimination would follow. If in such state a similar right of action arising under the laws of another state will be enforced, we see no reason why the liability of the defendant in its jurisdiction should not be regarded as a proper basis for probate jurisdiction and the grant of letters of administration."

It is insisted by appellee that the case of Cooper v. G., C. & S. F. Ry. Co., 41 Tex. Civ. App. 596, 93 S. W. 201, is a holding against the views herein expressed. We do not so regard it. In the Cooper Case deceased was injured in the Indian Territory; he died from such injuries so received in Oklahoma Territory. At the time of his death deceased and surviving beneficiaries were residents of Oklahoma Territory. The application for administration was commenced in Dallas county, Tex., at which time and during said administration proceedings the surviving beneficiaries continued to reside in Oklahoma Territory, and at no time did they reside in Texas, and deceased at no time owned property in this state. In addition to these facts, the court in its opinion said: "The common law is in full force in this state, except in so far as the same has been changed by statutory enactments, and, looking to our statutes, we find that the Legislature of this state has not seen fit to pass an identical

act with the one granted above, nor one of similar import."

In the case at bar, the deceased and surviving beneficiaries resided in El Paso county at the time of the injury and death; the injury and death taking place in the territory of New Mexico. The federal act, therefore, controls the cause of action, which act is substantially the same as the state act, and, as stated, the federal act, in so far as this cause of action is concerned, controls the recovery upon said cause of action in this state. We think that the statement of the facts which controlled in the Cooper Case, without any analysis on our part, discloses a different condition of facts, which controlled the court in its decision in that case from the instant case. In the instant case we are not required to predicate the decision upon comity as between the states, for under the federal act the venue of the suit is in El Paso county, Tex., and by said act concurrent jurisdiction is conferred upon both the federal and state courts.

For the reasons indicated, we hold that the judgment of the district court should be reversed, and the cause remanded, with instructions that judgment be entered in said court in accord with this opinion, and it is so ordered.